IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUE-AN FORD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-22-104-GLJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Claimant Su-An Ford requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing. (Tr. 39, 232). She completed tenth grade and has previously worked as a fast-food worker and cashier. (Tr. 31, 259). The claimant alleges she has been unable to work since November 26, 2019, due to bipolar disorder, major depressive disorder with psychotic features, anxiety disorder, and PTSD (Tr. 17, 258).

## Procedural History

Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 26, 2019. Her applications were denied. ALJ J. Leland Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated November 3, 2021 (Tr. 17-33). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he determined Claimant had the severe impairments of bipolar disorder, major depressive disorder, ADHD, PTSD, COPD, and obesity, as well as the nonsevere impairments of left elbow fracture status post closed reduction, hypertension, and urge incontinence. (Tr. 20).

The ALJ then determined that Claimant's impairments did not meet a Listing at step three. At step four, he found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that she can only remember and apply simple, multistep instructions and make simple work-related decisions, but she can concentrate and persist for extended periods in order to complete simple work tasks with routine supervision. Additionally, he determined she can interact with and respond appropriately to others in a routine work setting and adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually, but she needs to avoid work-related interaction with the general public. Finally, while she can recognize and avoid normal workplace hazards, she needs to avoid unprotected heights and dangerous moving machinery, as well as concentrated exposure to dust, fumes, odors, and poorly ventilated areas. (Tr. 25). The ALJ then concluded that although the claimant cannot return to her past relevant work, she is nevertheless not disabled because there is other work in the national economy that she could perform, *e.g.*, wrapper counter and hand packer (Tr. 31-33).

## Review

The claimant's sole contention of error is that that she cannot perform the jobs identified at step five in light of the assigned RFC. Because this contention lacks merit, the decision of the Commissioner should be affirmed.

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") regarding Claimant's past relevant work. He then posed a hypothetical matching the above-mentioned RFC to determine if there were other jobs Claimant could perform,

-4-

specifically including the limitations to "simple, multistep instructions," making "simple work-related decisions," and changes that are "infrequent, well explained, and introduced gradually." (Tr. 66-67). The VE indicated that Claimant could not perform any of her past work but identified two jobs classified as "light" work that such a person could perform: (i) wrapper counter, DICOT § 929.687-050; and (ii) hand packer, DICOT § 920.587-014 (Tr. 140). He indicated that there were 265,830 and 663,970 of these jobs, respectively, in the national economy. The VE further testified that the information provided was consistent with the Dictionary of Occupational Titles ("DOT") (Tr. 69).

As relevant to this appeal, the ALJ in his written decision adopted the VE's testimony that Claimant could perform the light jobs of wrapper counter and hand packer (Tr. 32). Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 32). The claimant, however, asserts that the ALJ erred in identifying jobs she could perform because there was a conflict between the information provided and the Dictionary of Occupational Titles ("DOT").

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified.*" 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between his testimony and the DOT, the claimant contends there is a conflict regarding the reasoning levels of the

jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Both jobs, wrapper counter and hand packer, have reasoning levels of 2. *See* DICOT §§ 929.687-050, 920.587-014. Reasoning Level 2 requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 929.687-050, 920.587-014. Claimant asserts that Reasoning Level 2 is incompatible with the limitation to changes that are "infrequent, well explained, and introduced gradually," and that she should have been limited to jobs with Reasoning Level 1. Reasoning Level 1 requires a worker to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" and to "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See, e.g.*, DICOT § 524.687-022. The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks and the RFC assigned here, although a reasoning level of three is not, and that other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d, 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-

level rating of one. We disagree."). *See also Danette Renee G. v. Kijakazi*, 2022 WL 17338283, at *15 (D. Kan. Nov. 30, 2022) ("Reasoning Level 2 was not the specific issue in *Hackett* but this court does not find justification therein to extend its prohibition to Reasoning Level 2 in the face of DOT Appendix C and the definition of unskilled work, in the face of *Hackett*'s specific statement regarding Reasoning Level 2, and absent a specific holding by that court binding on this court."); *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions[,] [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

Moreover, the Court notes here that Claimant has not clarified how a Reasoning Level 2 speaks to a claimant's ability to adapt to workplace changes, in any event. *See Stephanie Beth D. v. Kijakazi*, 2022 WL 1136192, at *9 (D. Kan. Apr. 18, 2022) ("Plaintiff argues that because she is limited "to simple, repetitive, routine tasks with simple, work-related decisions and few, if any, workplace changes" she is unable to meet the requirements of reasoning level 2 as quoted above. The court disagrees."). The Court recognizes that other Courts in this Circuit disagree. *See, e.g.*, *R.S. v. Saul*, 2021 WL 2156412, at *9 (D. Kan. May 27, 2021) ("The RFC in this case limits plaintiff to 'simple, routine, repetitive tasks involving <u>only</u> simple, work-related decisions with few, <u>if any</u>, workplace changes.' (emphasis added). These restrictions seem more extensive than a limitation to simple instructions or simple, repetitive or routine tasks. The restrictions

appear inconsistent with jobs involving level-two reasoning which may require lengthy (not one- or two-step) instructions and dealing with problems involving a few concrete variables in or from standardized situations."). However, the Court declines to find error here in the lack of binding precedent and where Courts who disagree couch the reasons for reversal in terms such as "seems" and "arguably."

The Court thus finds that the jobs identified do not pose a conflict. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform). Claimant nevertheless contends the Commissioner failed to prove, and the ALJ failed to make a finding, that 265,830 and 663,970 jobs are sufficiently significant numbers. The determination that work can be performed in significant numbers is considered case-specific, and "the issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (*quoting Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). The Tenth Circuit has held that this finding is not limited to local or regional numbers but is instead a determination of whether work exists in significant numbers in the regional *or* national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Here, the Court is persuaded that 929,800 jobs available nationally for the two jobs identified is significant. *See Evans v. Colvin*, 640 Fed. Appx. 731, 736 (10th Cir. 2016) ("[W]e have held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy.") (citing *Bainbridge v. Colvin,* 618 Fed.

-8-

Appx. 384, 391-392 (10th Cir.2015) (500,000 jobs); *Shockley v. Colvin,* 564 Fed. Appx. 935, 940-941 (10th Cir. 2014) (215,000 jobs); *Chrismon v. Colvin,* 531 Fed. Appx. 893, 899-900 (10th Cir. 2013) (212,000 jobs); *Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (152,000 jobs)).  *See also Stokes*, 274 Fed. Appx. at 684 (where the two remaining available jobs cited by the ALJ, there were 152,000 jobs nationally, "we do not believe any reasonable factfinder could have determined that suitable jobs did not exists in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").  Accordingly, the decision of the ALJ should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 21st day of July, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**